**LAKE COUNTY DIVISION OF FAMILY AND CHILDREN SERVICES,**
Appellant–Petitioner Below,

v.

**Richard C. CHARLTON, Appellee–Respondent Below.**

No. 45A03–9303–JV–91.

Court of Appeals of Indiana,
Third District.

March 29, 1994.

Diane Ross Boswell, M. Elizabeth Flores, Eugene M. Velazco, Jr., Gary, for appellant.

Tula Kavadias, Kavadias & Wyatt, East Chicago, for appellee.

STATON, Judge.

The Lake County Division of Family and Children Services ("FCS") appeals an order requiring FCS to reimburse certain medical expenses incurred by Richard Charlton, a child in need of services. Three issues are presented for our review:

I. Whether the trial court erroneously denied a motion to end the wardship of Charlton.

II. Whether the trial court demonstrated bias in favor of Charlton's parents by commenting upon a child support modification action involving Charlton.

III. Whether the trial court erroneously ordered FCS to reimburse Charlton's stepfather for certain medical expenses incurred by Charlton.

We reverse.

Richard Charlton, now age 14, was born with respiratory and heart defects; consequently, he has extraordinary medical needs. On February 7, 1991, Charlton was declared a temporary ward of FCS. At that time, the provider of Charlton's in-home life support equipment threatened disconnection due to the non-payment of rental charges. Charlton's medical insurance coverage had lapsed when his claims reached the maximum coverage amount. The court ordered FCS "to expend the necessary funds to maintain [Charlton's] present medical needs." Record, p. 6.

On September 12, 1991, FCS petitioned the juvenile court to declare that Charlton was a child in need of services. The petition was granted on January 6, 1992.[1] At a status hearing held on August 12, 1992, FCS asserted that Charlton was no longer a child in need of services and petitioned the court to end the wardship. The court denied the petition of FCS and ordered the reimbursement of certain medical expenses:

"Lake County Dept. of Public Welfare apprs. by Atty. Velazco and Atty. Boswell; Father apprs. by Atty. Kavadias; Mother apprs. in person and by counsel, Atty. Hoffman, for hearing on Motion to Dismiss. The Court further finds that the miscellaneous expenses listed on Rspndt.'s Exhibit A, except for the parking, tolls, lodging and transportation, NIPSCO, and school book rental, and tuition, are necessary medical-related expenses for the child who is a ward herein, and orders the Lake County Dept. of Public Welfare to reimburse Mr. Phillip Bethel for said expenses from February 7, 1991, to the present and as incurred in the future to [sic] extent that any of these said expenses are not paid for by any existing health insurance. Mrs. Bethel, the child's mother, is ordered to submit in writing to the Lake County Dept. of Public Welfare a list of said expenses with appropriate invoices or cancelled checks on or before the 10th day of each month; and the Lake County Dept. of Public Welfare shall reimburse Mr. Phillip Bethel for the same thereafter within a reasonable time period. This cause is set for review on January 12, 1993 at 1:00 p.m."

Record, p. 7.

This appeal ensued.

## I.

### *Motion to Discontinue Wardship*

■ FCS contends that, as of August 12, 1992, Charlton was no longer a child in need

---

1. Charlton remained in the home of his mother and step-father despite his adjudication as a child in need of services.

of services as defined by IND.CODE 31–6–4–3(a)(1):

"A child is a child in need of services if before the child's eighteenth birthday the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision."

■ A parent has a fundamental right to direct the upbringing of his or her child; moreover, there exists a corresponding duty of the parent to provide for the child's physical and mental well-being. Where the parents fail to fulfill their duty, the state has the authority, pursuant to its *parens patriae* power, to intervene. *In the Matter of Wardship of Nahrwold* (1981), Ind.App., 427 N.E.2d 474, *trans. denied.*

FCS argues that state intervention on behalf of Charlton was unnecessary after August 12, 1992 because: (1) there was no longer an imminent threat of the disconnection of Charlton's life support equipment; (2) Charlton was receiving ongoing medical coverage under two insurance policies; and (3) incidental medical expenses were being paid by Charlton's mother and stepfather. Charlton responds that the arrangements whereby the medical needs were being met was unsatisfactory as it resulted in undue familial hardship.

The evidence regarding the parents' financial resources to meet Charlton's medical needs is not disputed. As of the hearing date, Charlton's biological father had obtained traditional medical insurance coverage for Charlton (replacing coverage with a health maintenance organization that had rejected Charlton's claims). Charlton's stepfather had obtained employer-provided medical coverage for Charlton with a lifetime maximum benefit of $1,000,000.00 (replacing coverage with a lower lifetime maximum benefit). Charlton's mother testified that these primary and secondary insurers were cur-

rently paying Charlton's major medical expenses except for the deductible and co-insurance amounts totalling $1,500.00 annually.

Charlton's father was employed and paying $75.00 weekly for Charlton's support. Charlton's mother was unemployed due to her medical condition. She depended solely upon her husband to pay household bills; his annual income was $34,000.00. Because of the level of "household" income, Charlton was not eligible for programs such as Medicaid or Aid to Families with Dependent Children.

The household income (consisting of child support and the stepfather's salary) was used to pay certain "incidental" medical expenses that were not covered by insurance; these amounted to approximately $200.00 weekly.[2] The federal income tax deductions generated by these expenses were utilized by the mother and stepfather on a joint tax return.

Mother presented uncontroverted testimony that the payment of approximately $10,000.00 annually for incidental medical expenses caused her family to suffer financial hardship. However, we are constrained to agree with FCS that I.C. 31–6–4–3(a)(1) is applicable where parents lack the *ability* to provide for their children; it does not address a situation in which the parents encounter *difficulty* in meeting a child's needs. This court must give effect to the intention of the legislature as expressed in its statutory language. *State v. Windy City Fireworks, Inc.* (1992), Ind.App., 600 N.E.2d 555, 558. Employing the terms "inability, refusal, or neglect," our legislature has determined the basis upon which a child may be adjudicated a child in need of services, entitled to receive an allocation of limited public resources.

The uncontroverted evidence established that Charlton's medical needs were being met without State intervention as of the hearing date. The trial court erred by failing to grant the petition to end the wardship.

2. The "incidental" expenses consisted of: cleaning supplies for a tracheotomy, humidifier, bedding, adult diapers, vitamins, decongestants, stool softeners, parking, tolls, lodging (near hospitals), electricity to operate life support equipment, medically-related telephone charges, insurance deductible and eyeglasses. Record, p. 277.

## II.

### Comments of Trial Court

■ At the commencement of the hearing on FCS's petition to end the wardship, the trial court commented:

"I'll listen to whatever you have to say. I have the benefit of having sat through the hearing with Miss Kavadias and Mr. Hoffman on the paternity side of the house and it is clear that these people do not have the financial ability to pay this, at least the legally responsible parties don't. Mrs. Bethel and the father of the child do not have the financial ability to do it. The only way it's being done is through the good graces of Mrs. Bethel's present husband, who happens to have a decent enough job and they can scrape to put some funds together to pay for those extra items and, you know, I don't think there's any prohibition against you reimbursing somebody that may provide those services."

Record, pp. 125–26.

■ A trial court may not take judicial notice of the evidence presented in a collateral case. *Matter of A.C.B.* (1992), Ind.App., 598 N.E.2d 570, 573. Moreover, a trial court judge has the duty to remain impartial and refrain from making unnecessary comments or remarks. *Harrington v. State* (1992), Ind., 584 N.E.2d 558, 561, *reh. denied.*

Here, the trial court was the factfinder, charged with determining whether Charlton's parents were able to provide for his medical care as of the hearing date. However, before pertinent evidence was presented in the instant case, the trial court judge expressed an opinion on the merits, citing evidence presented in a previous paternity case. This was clearly improper.

## III.

### Reimbursement Order

■ Finally, FCS claims that the reimbursement order for the past and prospective medical expenses of Charlton was improper.

Charlton's status as a child in need of services between the dates of February 7, 1991 and August 12, 1992 was not challenged by FCS. Therefore, the portion of the reimbursement order applicable to medical expenses incurred by Charlton during his wardship appropriately assigns responsibility for payment to FCS.

However, the portion related to the reimbursement of prospective expenses was improper, inasmuch as the uncontroverted evidence disclosed that Charlton was no longer a child in need of services as of the hearing date.

Reversed.

GARRARD and FRIEDLANDER, JJ., concur.