## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 18 2015, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael B. Troemel
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of: <br><br> Br.H. & Be.H. (Minor Children), <br> and <br> C.H. (Father), <br><br> *Appellant-Respondent,* <br><br>  v. <br><br> The Indiana Department of Child Services, <br><br> *Appellee-Petitioner* | September 18, 2015 <br><br> Court of Appeals Case No. 79A05-1412-JT-602 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Faith A. Graham, Judge <br><br> Trial Court Cause Nos. 79D03-1405-JT-19 79D03-1405-JT-20 |

**Baker, Judge.**

Father appeals the judgment of the juvenile court terminating his parental relationship with two of his children, Br.H. and Be.H., arguing that there is insufficient evidence supporting the order. Finding sufficient evidence supporting the termination order, we affirm.

# Facts

# Prior DCS History

In July 2009, the Indiana Department of Child Services (DCS) received a report regarding two of Father's children, K.H. and C.N.H.[1] DCS found them physically abused, dirty, and unkempt. They were living in a trailer that lacked all utilities other than a generator used to power the television and the water heater. When K.H. and C.N.H. were removed a week later, they tested positive for methamphetamine and cocaine. The children were found to be children in need of services (CHINS), and Father tested positive for drugs throughout the CHINS case. On February 25, 2011, the trial court involuntarily terminated Father's parental rights over K.H. and C.N.H., finding that he had failed to participate in services and court hearings; had missed ten out of twelve visits with K.H. and C.N.H.; was discharged from services due to

---

[1] These children are not at issue in this case.

non-compliance; and had an extensive history of failure to maintain sobriety. Tr. Ex. 25 p. 4.

[3] Mother and Father are the parents of Br.H., born in June 2010, and Be.H., born in June 2013.[2] A month after Br.H.'s birth, DCS filed a petition alleging that he was a CHINS after he was born testing positive for opiates and was suffering from withdrawal symptoms. Father refused to participate in a drug screen and indicated that he was homeless. Based on the parent's admissions, the juvenile court adjudicated Br.H. to be a CHINS on July 29, 2010. In August 2010, the court ordered Father to participate in services. Eventually, the juvenile court closed the CHINS case in January 2012, despite finding in December 2011 that Father had been essentially non-compliant.

## Current DCS Case

[4] On June 17, 2013, DCS removed Br.H and Be.H. three days after Be.H. was born testing positive for drugs and suffering from withdrawal symptoms. DCS filed a CHINS petition for both children on June 19, 2013, which the court granted based on the parents' admissions of drug use.

[5] The juvenile court held a hearing on July 8, 2013, and issued parental participation and dispositional decrees. The juvenile court ordered reunification services with Father, including substance abuse assessments and

---

[2] Mother is not a party to this appeal.

treatment, parenting assessments, home-based case management services, individual counseling, random drug screens, and supervised visits. In August 2013, the court found Father in contempt, finding that he had failed to participate in a substance abuse assessment, failed to attend visitation, failed to participate in individual counseling, provided a diluted urine sample, tested positive for suboxone, failed to participate in a "supportive living facility," failed to participate in home-based case management, and had an outstanding warrant. Tr. Ex. 1 at p. 33. Father was incarcerated for contempt from November 2013 to January 2014. After his release, Father was again found in contempt of court on April 3, 2014, because he had tested positive for methamphetamine in March 2014.

[6] On May 19, 2014, DCS filed a termination of parental rights petition regarding Br.H. and Be.H. The juvenile court conducted factfinding hearings on August 13, October 17, and November 3, 2014. On December 9, 2014, the juvenile court granted the termination petition, finding, among other things, that "Father has a long-standing history of instability, substance abuse, and criminal behavior." Appellant's Br. 15.[3] It further concluded, "[t]he parents have

---

[3] We would ordinarily cite the Termination Order from the Appendix, rather than Appellant's brief. However, while Father's counsel did comply with Indiana Appellate Rule 46(A)(10)—"The brief shall include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal"—he did not comply with Indiana Appellate Rule 50(A)(2)(b)—the appendix shall contain "the appealed judgment or order, including any written opinion, memorandum of decision, or findings of fact and conclusions thereon relating to the issues raised on appeal"—because he left out every other page of the termination order. We encourage counsel to pay closer attention in the future to the documents he submits to this Court.

demonstrated short-term periods of stability and sobriety followed by longer periods of instability and drug use. Any recent short-term improvements do not outweigh the long-term, repetitive history of these parents failing to maintain stability and sobriety." Appellant's Br. 17. Moreover, the court found that Father did not have independent housing suitable for the children. His job takes him out of state for three weeks every month and he lives in a hotel when not working. The juvenile court concluded that termination is in the children's best interests. Father now appeals.

# Discussion and Decision

## I. Standard of Review

The Fourteenth Amendment to the United States Constitution protects the right of parents to raise their children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). However, parental interests are not absolute, and if parents are unable or unwilling to meet their parental responsibilities, their interests must be subordinated to those of their children. *Id.* In appropriate circumstances, a juvenile court may order the parent-child relationship terminated. *Id.* The purpose of terminating a parent-child relationship is not to punish the parents but to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). A juvenile court "need not wait until a child is irreversibly harmed before terminating the parent-child relationship." *In re N.Q.*, 996 N.E.2d 385, 391 (Ind. Ct. App. 2013).

[8] When reviewing a decision to terminate parental rights, we neither reweigh the evidence nor judge the credibility of witnesses. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We consider only the evidence and any reasonable inferences therefrom that support the judgment. *Id.*

[9] When, as here, the trial court enters findings of fact and conclusions of law, we employ a two-tiered standard of review. *Bester*, 839 N.E.2d at 147. We first determine whether the evidence supports the findings, and then determine whether the findings support the judgment. *Id.* We will only set aside the juvenile court's judgment if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the conclusions or the conclusions do not support the judgment. *Id.*

[10] Indiana Code section 31-35-2-4 sets out the elements for a petition to terminate a parent-child relationship:

> (2)   The petition must allege:
>
> (A)   that one (1) of the following is true:
>
> (i)   The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii)   A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside of the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[11] Father does not challenge the juvenile court's conclusions that the children have been removed from his care for the requisite period of time, I.C. § 31-35-2-4(b)(2)(A)(i), or that there is a satisfactory plan for the children's care and treatment, I.C. § 31-35-2-4(b)(2)(D). His only arguments on appeal are that DCS did not adequately prove 1) that there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement

outside the home of the parents will not be remedied, or 2) that termination is in the best interests of the children.

# I. Reasonable Probability That Conditions Will Not Be Remedied

[12] In arguing that the juvenile court erred by concluding there is a reasonable probability that conditions will not be remedied, Father first requests this Court to "review his testimony," to determine his current sobriety and employment. Appellant's Br. 3-5. He argues that he has been sober since March 2014 and has been gainfully employed in the construction business since July 2014. He also points to testimony from some DCS case managers indicating that he demonstrated good parenting skills during visitations.

[13] Father's argument is a request to reweigh the evidence heard at the juvenile court, which we will not do. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). Confining ourselves to the evidence that supports the judgment, we find substantial evidence to support the juvenile court's finding of fact that the conditions that led to the children's removal will not be remedied.

[14] The primary condition leading to the children's removal was Father's history of drug abuse. Father has admitted to the following drug history: he used drugs prior to 2005; completed drug treatment in September 2005, but relapsed and continued to use drugs for the next five years; stopped in July 2010, but relapsed around June 2013; cleaned up in June 2013, but relapsed by August; was clean during his incarceration from November 2013 to January 2014, but tested

positive for methamphetamine in January after his release; started trying not to use drugs in February 2014, but relapsed by March, again testing positive for methamphetamine; engaged in an intensive outpatient substance abuse treatment from March to July 2014, but tested positive for marijuana use in May. He has not provided DCS with a drug screen since July 25, 2014. Given this history, there was substantial evidence to support the finding of a reasonable likelihood that Father's drug use will continue.

[15] In addition, there is substantial evidence from which the trial court could find that Father was not participating in court-ordered services. He has been found in contempt twice, and almost all of the services he has been ordered to complete have been terminated because of his lack of contact and missed appointments. Father also testified at the hearings that he still did not have adequate housing, as he was living out of a hotel.

[16] In sum, there was substantial evidence from which the juvenile court could find that the conditions that led to the removal of the children would not be remedied.

## II. Best Interests of the Children

[17] Father next takes issue with the juvenile court's finding that termination of the parent-child relationship would be in the children's best interests. He points to evidence showing an attachment between him and Br.H. and argues that children have a right to be raised by their biological parent.

[18]     While it is certainly true that "[a] parent has a fundamental right to direct the upbringing of his or her child . . . there exists a corresponding duty of the parent to provide for the child's physical and mental well-being." *Lake Cnty Div. of Family and Children Servs. v. Charlton*, 631 N.E.2d 526, 528 (Ind. Ct. App. 1994). "When the parents fail to fulfill their duty, the state has the authority, pursuant to its *parens patriae* power, to intervene." *Id.*

[19]     Here, the same history of drug abuse and lack of housing recited above provides substantial evidence from which the juvenile court could find that termination of the parent-child relationship was in the best interests of the children. While some DCS workers gave positive testimony about Father, the DCS case manager and the court appointed special advocate both testified that termination was in the children's best interests.

[20]     Father concedes that "[t]his determination is a close call." Appellant's Br. 10. That fact alone would foreclose Father's appeal, as "close call" is the antithesis of "clearly erroneous." Consequently, his arguments must fail.

[21]     The judgment of the juvenile court is affirmed.

Bailey, J., and Mathias, J., concur.