# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:

D.S. and N.H. (*Minor Children*)

*Children in Need of Services*
and
A.S. (*Mother*),

*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner.*

March 31, 2016

Court of Appeals Case No.
49A05-1507-JC-950

Appeal from the Marion Superior
Court

The Honorable Marilyn Moores,
Judge

The Honorable Jennifer Hubartt,
Magistrate

Trial Court Cause Nos.
49D09-1503-JC-948
49D09-1503-JC-949

**Robb, Judge.**

# Case Summary and Issues

A.S. ("Mother") appeals the juvenile court's adjudication of her two children, D.X.S. and N.H. ("Children"), as children in need of services ("CHINS"). Mother raises three issues on appeal, which we consolidate and restate as (1) whether the juvenile court's CHINS determination is clearly erroneous, and (2) whether the juvenile court's Parental Participation Order is clearly erroneous. Concluding neither the CHINS determination nor the Parental Participation Order is clearly erroneous, we affirm.

# Facts and Procedural History

Born in September 2011, D.X.S. is the child of D.S. and Mother. Following D.X.S.'s birth, Mother was awarded full custody of D.X.S. and D.S. was awarded parenting time. Mother and D.X.S. lived with D.X.S.'s maternal grandmother, T.S., and maternal great-grandmother. In August 2013, Mother was convicted of possession of a controlled substance and public intoxication, and Mother was sentenced to probation. Four months later, Mother was convicted of possession of a controlled substance and operating a vehicle while intoxicated; again, Mother was sentenced to probation. In August 2014, Mother gave birth to N.H. Despite not being N.H.'s biological father, C.H.

signed N.H.'s birth certificate.[1]  Mother and the Children continued to live with T.S.

[3] In March 2015, the Indiana Department of Child Services ("DCS") received a report alleging Mother abused drugs and often left the Children unattended. Thereafter, Deanna Watson, a Family Case Manager with DCS, began investigating the report and interviewed T.S. and Mother.  T.S. stated Mother worked late hours as a waitress and exotic dancer.  When Mother went to work, Mother relied on T.S. and the Children's maternal great-grandparents to babysit the Children.  At times, Mother would leave the house for several days without returning, or contacting T.S., to check on the Children's well-being. When Mother did return home, Mother often slept and did not spend much time with the Children.  T.S. suspected Mother had a problem with drugs and alcohol.  Mother admitted to using cocaine three times per week and leaving the Children under T.S.' supervision.  Mother further stated the Children caused her significant stress and she needed assistance and services.  Mother then submitted to a drug screen and tested positive for cocaine and opiates. Concerned for the Children's well-being, DCS immediately removed the Children from Mother's custody and placed the Children with T.S.

[4] On March 20, 2015, DCS filed a petition alleging the Children were CHINS. On the same day, the juvenile court held a joint detention and initial hearing.

---

[1] Neither D.S. nor C.H. appeal the juvenile court's order adjudicating the Children as CHINS.

At the hearing, the juvenile court continued the Children's removal from Mother's custody and placement with T.S., appointed a guardian ad litem, and ordered Mother to vacate T.S.'s home until Mother could provide five negative drug screens.[2] Per DCS' recommendation, Mother began meeting with a home-based case manager at the beginning of April 2015. On April 20, 2015, the juvenile court held a pre-trial hearing. Mother did not appear because she was in jail for a probation violation. On May 4, Mother appeared for a pre-trial hearing, and the juvenile court authorized Mother to reside in T.S.'s home with the Children, contingent upon Mother continuing to provide negative drug screens.

[5]     At the fact-finding hearing on June 22, 2015, Mother's probation officer, Michael Feldman, testified the terms of Mother's probation required Mother to participate in drug testing and a substance abuse assessment. Mother completed the substance abuse assessment and was not ordered to seek treatment. After Mother admitted to using cocaine, however, Feldman ordered Mother to seek substance abuse treatment before her probationary term ended. To Feldman's knowledge, Mother was still on probation at the time of the fact-finding hearing and had not yet sought treatment. Feldman also testified he had recently filed a petition alleging Mother violated the terms of her probation, but the record does not describe the allegation(s) with any specificity. Also at

---

[2] On March 30, 2015, the juvenile court granted DCS' motion to amend its petition to include "A.J." as the alleged father to N.H. A.J. never appeared at any of the pre-trial hearings or the fact-finding hearing, and the juvenile court issued a default order as to A.J.

the time of the fact-finding hearing, the trial court in Mother's criminal case had not made a final ruling on Mother's alleged probation violation. Despite Mother having until the end of her probationary term to seek substance abuse treatment, Feldman opined he was concerned Mother would not complete the required substance abuse treatment.

[6] Mother's home-based case manager, Candace Balzano, testified she and Mother attempted to meet weekly, but Mother did not consistently show up to her appointments. Balzano opined Mother should receive additional services to assist in parenting the Children. T.S. testified Mother did not pay for the Children's clothing or food. In addition, T.S. stated she kicked Mother out of the home because Mother came home intoxicated twice. T.S. also testified Mother's absence from the Children's lives had an adverse effect on the Children. Specifically, T.S. observed D.X.S. missed Mother a great deal and often asked where Mother was.

[7] On July 1, 2015, the juvenile court issued an order adjudicating the Children as CHINS. The juvenile court's order included the following relevant findings:

> 7. On or about March 18, 2015, [Mother] admitted to DCS FCM Deanna Watson that she was currently using cocaine approximately three times per week and had used approximately three days prior to that date.
>
> 8. On or about March 18, 2015, [Mother] admitted to FCM Watson that she was stressed out with the children and needed assistance and services.
>
> 9. On or about March 18, 2015, [Mother] admitted to FCM

Watson that she had just left an abusive relationship with [C.H.]

10. On or about March 18, 2015[,] and at the present time, [Mother] is on adult probation for drug and alcohol related convictions.

11. [Mother] has been Court ordered through her criminal convictions to participate in a Substance Abuse Evaluation, Substance Abuse Treatment, and Random Drug Screens.

12. Despite being Court ordered to complete the substance abuse services and drug screens, [Mother] has not yet completed the services.

13. [Mother]'s Probation Officer Michael Feldman has filed a Violation of Probation with the criminal court concerning [Mother]'s lack of progress in services.
* * *
15. [Mother] has acknowledged the need for services to Ms. Balzano, stating to Ms. Balzano that she is interested in obtaining a GED, changing her employment from a waitress and exotic dancer, securing housing, saving money, and achieving sobriety.

16. [Mother] has been inconsistent in her work with Ms. Balzano and on the achievement of her treatment goals.

17. [Mother] has not successfully achieved her treatment goals with Ms. Balzano as of the date of this fact finding hearing.

18. The children have been placed in relative care with maternal grandmother, [T.S.] since approximately [M]arch 20, 2015.

19. [Mother] has attempted to see the children in the home of [T.S.] when [T.S.] perceived her daughter to be under the influence of drugs and/or alcohol.

20. [Mother] has told [T.S.] that she wants to get sober, but her

interest in sobriety is not consistent, therefore she has not been successful.

* * *

24. [D.X.S.] has never lived with his father, [D.S.], but merely visited [D.S.] and his family.

25. [D.S.] is unemployed and has no independent means to provide necessities, including food, clothing, and shelter, for himself and his child. Additionally, [D.S.] lives in the home of his mother . . . and has no independent means to maintain his own home; [D.S.] has no driver's license nor independent transportation . . . .

26. [Mother] has admitted to substance abuse which has resulted in criminal convictions, probation, and which compromises her ability to provide care, necessities, and supervision for her young children.

27. [Mother] has not demonstrated that she has resolved her substance abuse issues and that she can provide care, necessities, and supervision for her children. [Mother] has not consistently participated in casemanagement [sic] services, a probation violation has been filed regarding her substance abuse services, and no evidence such as drug screen results were presented to this court regarding her current sobriety.

28. Neither [C.H.] nor [D.S.] are able or willing to independently provide care, necessities, and supervision for their children.

Appellant's Appendix at 104-05.

[8] On July 18, the juvenile court issued its Parental Participation Order, ordering Mother to engage in a home-based therapy program and follow all recommendations, to participate in a substance abuse assessment and

successfully complete all treatment recommendations, and to submit to random drug and alcohol screens. Mother now appeals the juvenile court's order adjudicating the Children as CHINS and the juvenile court's Parental Participation Order. Additional facts will be added as necessary.

# Discussion and Decision

## I. Standard of Review

When reviewing a juvenile court's CHINS determination, we neither reweigh the evidence nor reassess witness credibility. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.*

Where, as here, the juvenile court enters findings of fact and conclusions sua sponte, we apply a two-tiered standard of review to the issues covered by the findings: (1) we determine whether the evidence supports the findings of fact, and (2) whether the findings support the judgment. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). "[W]e review the remaining issues under the general judgment standard, under which a judgment will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.* (citation and internal quotation marks omitted)." A finding of fact is clearly erroneous if the record lacks evidence, or reasonable inferences from the evidence, to support it. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied.* The judgment is clearly erroneous if we are left with a "definite and firm conviction that a mistake has been made." *In re S.L.*, 997 N.E.2d 1114, 1123

(Ind. Ct. App. 2013). We will reverse only upon a showing that the court's decision was clearly erroneous. *In re K.D.*, 962 N.E.2d at 1253.

## II. CHINS Determination

[11] Mother contends the juvenile court's order adjudicating the Children as CHINS is clearly erroneous. Specifically, Mother argues the evidence does not support six of the juvenile court's factual findings and the unchallenged findings of fact do not support the juvenile court's judgment. The juvenile court adjudicated the Children as CHINS under Indiana Code section 31-34-1-1, which provides,

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

In other words, the statute requires State to prove three basic elements: (1) the parent's actions or inactions have seriously endangered the child, (2) the child's needs are unmet, and (3) the child's needs are unlikely to be met without State intervention. *In re S.D.*, 2 N.E.3d at 1287. "That final element guards against

unwarranted State interference in family life, reserving that intrusion for families 'where parents lack the *ability* to provide for their children,' not merely where they 'encounter *difficulty* in meeting a child's needs." *Id.* (emphasis in original) (quoting *Lake Cnty. Div. of Family & Children Servs. v. Charlton*, 631 N.E.2d 526, 528 (Ind. Ct. App. 1994)). Because a CHINS proceeding is a civil proceeding, the State must prove the child is a CHINS by a preponderance of the evidence. *In re K.D.*, 962 N.E.2d at 1253.

[12] Mother first argues the juvenile court erred when it found certain facts that, according to Mother, are not supported by the record. Specifically, Mother challenges Factual Findings 13 and 24-28. We interpret Mother's challenges to Factual Findings 24-28 as merely requests for this court to reweigh the evidence, which we will not do. [3] *See id.* As to Factual Finding 13, Mother concedes the evidence supports a finding that Feldman filed a petition alleging Mother violated probation, but Mother correctly argues there is nothing in the record to indicate Feldman filed the petition because of "[Mother's]'s lack of progress in services." Appellant's App. at 105. For purposes of this appeal, we proceed under the assumption that the latter portion of Factual Finding 13 is not supported by the evidence. We note, however, the erroneous portion of Factual Finding 13 does not render the juvenile court's CHINS determination

---

[3] Mother also argues Factual Finding 27 indicates the juvenile court shifted the burden of proof to Mother. We disagree. At best, Factual Finding 27 merely indicates Mother had the burden of going forward with evidence after DCS met its burden.

clearly erroneous because, as discussed below, there is sufficient evidence elsewhere to support the juvenile court's judgment.

[13] Second, Mother contends there is no evidence that Mother's actions or inactions seriously endangered the Children. We disagree. The juvenile court's findings indicate Mother, while on probation for drug and alcohol related offenses, used cocaine approximately three times per week. Moreover, the record indicates Mother did not pay for the Children's food or clothing, Mother left the Children with T.S. for days at a time without checking on the Children's well-being, Mother returned to the home intoxicated on two separate occasions, and Mother tested positive for cocaine and opiates. The juvenile court's conclusion that Mother's actions and inactions seriously endangered the Children is not clearly erroneous.

[14] Finally, Mother contends there is no evidence that coercive intervention of the court is necessary. As noted above, Mother tested positive for cocaine and opiates *despite* being on probation for convictions related to substance abuse. In addition, Mother was inconsistent in meeting with Balzano to discuss working toward securing housing, saving money, changing employment, and achieving sobriety. Moreover, Balzano opined court intervention was necessary, T.S. opined Mother could not achieve sobriety on her own, and even Mother admitted to Watson she needed services. The juvenile court's conclusion that coercive intervention of the court is necessary is not clearly erroneous.

# III. Parental Participation Order

[15] Mother also argues there was insufficient evidence to support the juvenile court's Parental Participation Order requiring Mother to participate in home-based therapy, to participate in a substance abuse assessment and successfully complete all treatment recommendations, and to submit to random drug and alcohol screens. Indiana Code section 31-34-20-3 provides,

> If the juvenile court determines that a parent, guardian, or custodian should participate in a program of care, treatment, or rehabilitation for the child, the court may order the parent, guardian, or custodian to do the following:
>
> > (1) Obtain assistance in fulfilling the obligations as a parent, guardian, or custodian.
> >
> > (2) Provide specified care, treatment, or supervision for the child.
> >
> > (3) Work with a person providing care, treatment, or rehabilitation for the child.
> >
> > (4) Participate in a program operated by or through the department of correction.

[16] In support of her argument, Mother relies on our decision in *In re A.C.*, 905 N.E.2d 456 (Ind. Ct. App. 2009). There, the juvenile court adjudicated A.C. a CHINS and ordered the mother, in part, to submit to random drug testing and to participate in a substance abuse assessment and successfully complete all treatment recommendations. Because neither the record nor the juvenile court's findings referenced any allegations of the mother's substance abuse, we

vacated those portions of the parental participation decree, reasoning, "Although the juvenile court has broad discretion in determining what programs and services in which a parent is required to participate, the requirements must relate to some behavior or circumstance that was revealed by the evidence." *Id.* at 464.

Similar to *In re A.C.*, the juvenile court ordered Mother to participate in a substance abuse assessment, successfully complete all treatment recommendations, and submit to random drug and alcohol screens. Unlike *In re A.C.*, however, the record and the juvenile court's findings indicate Mother has a substance abuse problem. Specifically, Mother has been convicted of possession of a controlled substance on two separate occasions, public intoxication, and operating a vehicle while intoxicated; Mother admitted to using cocaine while on probation and thereafter tested positive for cocaine and opiates; and T.S. kicked Mother out of the house because she arrived home intoxicated on two separate occasions. We therefore conclude the juvenile court's Parental Participation Order relates to Mother's behaviors and is not clearly erroneous.

## Conclusion

Concluding the juvenile court's CHINS determination and Parental Participation Order are not clearly erroneous, we affirm.

Affirmed.

Barnes, J., and Altice, J., concur.