FILED

Oct 13 2017, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Ann Ginda
Indiana Legal Services, Inc.
Lafayette, Indiana

Cynthia Smith
Law Office of Cynthia P. Smith
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Thomas J. Herr
Herr & Phillips, LLC
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dyamond Harris,

*Appellant-Defendant,*

v.

Lafayette LIHTC, LP,

*Appellee-Plaintiff*

October 13, 2017

Court of Appeals Case No.
79A02-1703-SC-638

Appeal from the Tippecanoe
Superior Court

The Honorable Laura W. Zeman,
Judge

Trial Court Cause No.
79D04-1702-SC-801

**Crone, Judge.**

## Case Summary

Dyamond Harris appeals the trial court's judgment and writ of possession in favor of Lafayette LIHTC, LP, on its claim against Harris for unpaid rent. Harris contends that the trial court committed clear error by improperly shifting the burden of proof and violated her due process right to an impartial decision maker. We agree on both counts and therefore reverse.

## Facts and Procedural History

On January 27, 2016, Harris entered into a lease with a landlord identified as "Claystone at the Crossing" for a housing unit, number 22-0600, subsidized by the Department of Housing and Urban Development ("HUD"). Appellant's App. Vol. 2 at 9.[1] The lease was signed on behalf of Claystone by Mary Jo Farr. *Id*. at 16. The term of the lease was from January 27, 2016, to December 31, 2016, after which it would continue for successive terms of one month unless automatically terminated as permitted by paragraph 23. *Id*. Pursuant to the lease, Harris agreed to pay rent of $45.00, due on the first day of the month. *Id*. The lease also provided, "[Harris] has deposited $176.00 with [Claystone]," which agreed to "hold this security deposit" for the period that Harris occupies the unit. *Id*. at 11. Paragraph 23 of the lease governed termination of tenancy and provided, "Any termination of this [lease] by [Claystone] must be carried out in accordance with HUD regulations, State and local law, and the terms of

---

[1] Lafayette alleges that Harris signed the lease on August 11, 2016. Appellee's Br. at 7. However, that date is when Harris signed a document titled "House Rules." Appellant's App. Vol. 2 at 29.

this [lease]." *Id.* at 14. Pursuant to Paragraph 23, Claystone agreed to give Harris written notice and the grounds for the proposed termination and advise Harris "that [she] has 10 days within which to discuss the proposed termination of tenancy with [Claystone]" and "If [Harris] requests the meeting, [Claystone] agrees to discuss the proposed termination with [Harris]." *Id.* at 15.

[3] On February 28, 2017, Lafayette, doing business as Romney Meadows, filed a notice of claim in the small claims court that alleged as follows:[2]

> On or about the date of January 27, 2016 [Lafayette] rented or leased to [Harris] the property located at 600 Northchester Lane, Unit 22-0600, Lafayette, in Tippecanoe County, Indiana for the term of one year and extended on a month to month basis. [Harris] agreed to pay rent in advance on the 1st day of each month. Rent is now past due in the amount of $38.00 more or less.

*Id.* at 8. Lafayette demanded judgment for $38.00 past due rent, pro rata rent through the date of possession, possession of the real estate, prejudgment interest, and court costs of $121.00. *Id.* The notice ordered Harris to appear in court on March 14, 2017. Harris received service of Lafayette's claim on March 3, 2017. *Id.* at 3.

---

[2] Although Lafayette does not describe its connection to Claystone in its brief, a document titled "House Rules" signed by Harris on August 11, 2016, states that Lafayette was doing business as Claystone. Appellant's App. at 20, 29.

[4]     At the March 14, 2017, hearing Lafayette appeared by counsel Thomas Herr and two representatives referred to in the transcript as Ms. Horn and Ms. Fleming. Harris appeared pro se. The trial court did not swear anyone in. The trial court began the hearing by informing Harris that Lafayette claimed that she had not paid her February 2017 rent and asking her if she had paid it. Harris responded that when she first moved in, she had provided the former landlord with two money orders for $45.00 each; that money was supposed to be credited to her account, and Lafayette was supposed to use it for her rent. In support, she attempted to show the trial court two handwritten receipts dated January 28, 2016. *Id*. at 35; Tr. Vol. 2 at 4. Each receipt acknowledged a money order of $45.00 for rent for "Building 22-600" from "Claystone at the Crossing" and were purportedly signed by "Mary Jo Farr." Appellant's App. Vol. 2 at 35. Although the receipts had Harris's unit number, they did not have her name written on them. The trial court asked Lafayette what it knew about Harris's explanation. Ms. Horn claimed that they knew nothing about it, and Ms. Fleming said that they "just saw [the] receipts," and "[Harris] just sprung this on us today." Tr. Vol. 2 at 4. Harris asserted that she had told them about the receipts the week before. *Id*.

[5]     Harris informed the trial court that she had driven to Chicago to get her "paperwork," explaining, "This is my first time having my own apartment on my own[,] so my parents help me a lot[, and] keep my important papers." *Id*. at 5. The trial court stated, "You're an adult. … Mom and dad are out of the picture now. You take care of yourself. Okay, now, who is paying your rent?

…. Thirty-eight dollars a month in rent?" *Id*. at 5-6. Harris replied, "Me." *Id*. at 6. The trial court responded, "No, no, this apartment does not cost them thirty-eight dollars. Who else is paying your rent? Somebody is paying rent. Me as a taxpayer[? I]s it Section 8? What is it?" *Id*. Ms. Fleming advised the trial court that Harris's housing was Section 8. The trial court then stated, "Section 8, okay so what is it about you that requires Section 8 housing such that you can't keep track of thirty-eight dollars?" *Id*. Harris explained that when she initially moved into the housing unit, there was another "landlord" handling her case who no longer worked there and that Harris had given that landlord the money orders and told her to keep the money in Harris's account until she had to pay rent one day. *Id*. Ms. Horn stated, "[W]e don't actually do paper receipts, it's against our company policy." *Id*. at 6-7. In apparent reference to the receipts, the trial court stated, "I mean I can buy this at Walgreens." *Id*. at 7. Harris asserted that when she first moved in "everything was done by paper" by "Clay Stone" and that "Mary Jo" handled her case, but Mary Jo did not work there anymore. *Id*. The trial court then said, "Okay, so if they say you owe thirty-eight dollars for February, just pay them the thirty-eight to get it done." *Id*. Harris asserted that she was "trying to explain" that the money orders were supposed to be credited to her account. *Id*. The trial court asked Harris why the 2016 receipts would apply to rent in 2017 rather than to rent in January or February 2016. *Id*. Harris clarified that she had paid the two money orders for January and February 2016 rent, but it later turned out that she did not owe rent because she was not working during those months. *Id*. at 8-9. She said that she should have a credit of $90.00 in her

account and she had two receipts, but Lafayette had a credit of only $45.00. The trial court told Harris, "Okay, those receipts are basically worthless, okay." *Id*. at 10.

[6] The trial court asked the Lafayette representatives whether Harris owed rent for January or February 2016. *Id*. at 11. Ms. Horn replied that "Harris owed … fifty-nine dollars. They put a charge on here from January 27 of [2016] to 2/29/2016." *Id*. The trial court observed that Harris had made a payment of $45.00 on February 3, 2016. *Id*. The trial court again asked the Lafayette representatives whether Harris owed rent for January and February 2016. *Id*. at 12. Ms. Horn said that Harris "still owed rent for Feb, January." *Id*. Harris interjected, "[T]hen they came back and fixed it. … I never worked in January or February. If you don't work, you don't pay rent and [there is] paperwork saying that I wasn't working in January or February." *Id*. at 12. The trial court responded, "Which is one of the crazy things about our country now. You have people who don't work and free apartments[,] and the rest of us have to work to pay for it. That's one of the problems in our country." *Id*. The trial court then repeatedly asked Harris why she did not just pay the $38.00 as a "practical matter … just to get this over with?" *Id*. at 12-13.

[7] The trial court and the parties continued to discuss whether Harris owed rent for January and February of 2016. Finally, the trial court told Harris, "I have nothing to document that you were not supposed to pay [rent] in January and February of last year." *Id*. at 15. Harris replied, "They got my, they got my files[,] like that's what I'm saying[,] they don't give me my files. They have my

big folder with everything." *Id*. Harris also told the trial court, "I called them on Friday and told them I was going to bring my receipts in. …. She said just bring them to court because I'm going to have to go to court regardless." *Id*. at 17. The trial court then said, "Okay, how do we resolve this people? I have nothing from you that proves that she owed rent and I have nothing that proves you paid rent." *Id*. Harris insisted that she did not have to pay rent in January or February of 2016 and asked for a continuance so that she could obtain the paperwork verifying that she did not have to pay rent in January or February of 2016. The trial court decided to continue the hearing to March 16, 2017.

[8] On that date, Lafayette appeared by counsel and Ms. Horn and Ms. Fleming. Harris appeared pro se. The trial court asked Harris if she had the papers "to show that, that you paid rent that you did not need to pay in January and February." *Id*. at 21. Harris replied, "No, because they won't give me my papers in my file. I asked for my papers …" *Id*. Harris had some documents that she attempted to show the trial court, but the trial court said, "No, I'm not going through twelve pieces of paper." *Id*. at 22. Lafayette's counsel informed the trial court that they agreed that Harris did *not* owe rent in January or February 2016. *Id*. He also acknowledged that Harris had paid $45.00 in February 2016 but that $30.00 of that payment was held as a security deposit and the remaining $15.00 was held as a credit on Harris's account. *Id*. at 23. He said that Lafayette applied the $15.00 credit to the February 2017 rent of $58.00 and Harris owed a balance of $38.00 for February 2017 rent. *Id*. at 24.

[9] The trial court asked Harris, "Why are you not paying rent? I pay rent. I pay a mortgage. Why don't you?" *Id.* at 25. Harris said, "Because I wasn't working. When you don't work[,] you don't have to pay rent." *Id*. The trial court responded, "So [you] don't work you get free rent? …. What a country, what a country." *Id*. Ms. Horn stated that Harris did not owe rent for January 2017, but that she signed a document indicating that she would start paying rent in February. The trial court informed Harris that she owed $38.00 for February's rent and $40.48 for rent through March 23, 2017. Harris said, "So is there any other way I can like (inaudible)?" *Id.* at 29. The trial court told Harris, "This is it. When you live somewhere you have to pay rent and you have to pay rent on time. …. We're asking you to pay a dollar seventy-six a day. Okay?" *Id*. At the end of the hearing, the trial court entered judgment in favor of Lafayette and against Harris for $78.48 plus court costs of $121.00 and issued a writ granting Lafayette possession of the apartment on March 23, 2017.

[10] Harris, by counsel, filed a motion for stay to enforce judgment, which the trial court denied, and a motion to proceed on appeal in forma pauperis, which the trial court granted. Harris also filed a motion for leave to modify the clerk's record to include the two 2016 receipts she tendered, to which Lafayette objected. The trial court issued an order to correct the clerk's record to include Harris's tendered receipts and show that they were not admitted because there was "no name on the receipts." Appellant's App. Vol. 2 at 36. This appeal ensued. This Court granted Harris's request for an emergency stay of proceedings permitting her to remain in her apartment pending the appeal.

# Discussion and Decision

## Section 1 - The trial court improperly shifted the burden of proof to Harris.

[11] Harris asserts that the judgment is clearly erroneous because the trial court improperly shifted the burden of proof to her. We note that judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). When we review claims tried by the bench without a jury, we will not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). "But this deferential standard does not apply to the substantive rules of law," which we review de novo just as we do appeals from a court of general jurisdiction. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Harris's arguments present questions of law, which we review de novo. *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008).

[12] We address Harris's arguments in the context of small claims actions, which are designed to be less formally structured than plenary proceedings. *Matusky v. Sheffield Square Apts.*, 654 N.E.2d 740, 742 (Ind. 1995). Indiana Small Claims Rule 8(A) provides that a small claims trial "shall be informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law, and shall not be bound by the statutory provisions or rules of practice, procedure, pleadings or evidence except provisions relating to privileged communications and offers of compromise." "The informality of

litigating in small claims court promotes doing substantial justice in a relatively efficient way, conferring benefits on plaintiffs and defendants alike." *Morton*, 898 N.E.2d at 1197. Nevertheless, "[t]he burden of proof in a small claims civil suit is the same as it would be had the case been filed in a general trial court." *Herren v. Dishman*, 1 N.E.3d 697, 702 (Ind. Ct. App. 2013). "While the method of proof may be informal, the relaxation of evidentiary rules is not the equivalent of relaxation of the burden of proof. It is incumbent upon the party who bears the burden of proof to demonstrate that it is entitled to the recovery sought." *LTL Truck Serv., LLC v. Safeguard, Inc.*, 817 N.E.2d 664, 668 (Ind. Ct. App. 2004). "A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of the evidence." *City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995).

[13] We begin by observing that the only documentary evidence in the record before us is the lease. The lease does not show that Harris has unpaid rent. Simply put, there is no documentary evidence in the record that establishes that Harris owes Lafayette money. Furthermore, at the March 14 hearing, the trial court did not swear in any witnesses, despite the requirement that "[a]ll testimony shall be given under oath or affirmation." Ind. Small Claims Rule 8(B). The trial court began the hearing by informing Harris that Lafayette claimed that she had not paid her February 2017 rent and asking her if she had paid it. The trial court then questioned the parties about Harris's receipts, whether she had a

credit on her account, and whether she owed rent for January and February 2016. Finally, the trial court said, "I have nothing from you that proves that she owed rent and I have nothing that proves you paid rent." Tr. Vol 2. at 17. The trial court decided to continue the hearing so that Harris could present documents in support of her position. However, Lafayette had not met its burden of proving that Harris owed it money. Thus, the trial court improperly shifted the burden of proof.

[14] Lafayette asserts that the record does not support that the trial court improperly shifted the burden of proof to Harris. According to Lafayette, the trial court's statement that, "I have nothing from you that proves that she owed rent and I have nothing that proves you paid rent" referred to January and February of 2016 and that the trial court "mistakenly believed" that Lafayette was claiming that Harris was required to pay rent for those two months. Appellee's Br. at 18. Lafayette maintains that the trial court's "misunderstanding" was later recognized and corrected when Lafayette stipulated that Harris owed no rent for January and February 2016 and by "that point in the proceeding, Harris had already admitted she was required to pay rent starting in February 2017." *Id.* at 18-19 (citing Tr. Vol. 2 at 4).

[15] Lafayette mischaracterizes the record. The record clearly shows that the trial court was not mistaken in believing that Lafayette claimed that Harris owed rent for January and February of 2016. During the March 14 hearing, the trial court twice asked the Lafayette representatives whether Harris owed rent for January and February 2016, and they maintained that Harris did. Tr. Vol. 2 at

11-12. In fact, it was not until the hearing was reconvened on March 16 that Lafayette acknowledged that Harris had not owed rent for January and February 2016. *Id.* at 22. Lafayette admitted that Harris had paid $45.00 in February 2016 but asserted for the first time that it withheld $30.00 for a security deposit. As for Lafayette's assertion that Harris had already admitted that she was required to pay rent starting in February 2017, we disagree. Harris never admitted that she owed Lafayette money for her February 2017 rent and consistently maintained that there was money in her account to cover the rent. Lafayette's argument is without merit. We conclude that because Lafayette failed to establish that Harris owed it money by the end of the March 14 hearing, the trial court improperly shifted the burden of proof and erred by continuing the hearing rather than ruling against Lafayette. *See LTL Truck Serv.*, 817 N.E.2d at 668. Consequently, the judgment is clearly erroneous and must be reversed.

## Section 2 – The trial court failed to preside over the hearing as a neutral, impartial decision maker in violation of Harris's due process rights.

[16] Notwithstanding our reversal of the trial court's judgment, we also address Harris's argument that she was denied her due process right to an impartial decision maker. Our review of the transcript leads us to agree with Harris.

[17] A "'trial before an impartial judge is an essential element of due process.'" *In re J.K.*, 30 N.E.3d 695, 699 (Ind. 2015) (quoting *Everling v. State*, 929 N.E.2d 1281, 1287 (Ind. 2010)); *see also Rynerson v. City of Franklin*, 669 N.E.2d 964, 967 (Ind.

1996) (A neutral, unbiased, adjudicatory decision maker is a core requirement of due process.). A "'biased decision maker [is] constitutionally unacceptable [and] our system of law has always endeavored to prevent even the probability of unfairness.'" *Hewitt v. Westfield Washington Sch. Corp.*, 46 N.E.3d 425, 435 (Ind. 2015) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

[18] We afford trial judges ample "'latitude to run the courtroom and maintain discipline and control of the trial.'" *J.K.*, 30 N.E.3d at 698 (quoting *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind. 1997)). However, a judge has a "'duty to remain impartial and refrain from making unnecessary comments or remarks.'" *Id*. at 699 (quoting *Lake Cty. Div. of Family & Children Servs. v. Charlton*, 631 N.E.2d 526, 529 (Ind. Ct. App. 1994)). At all times the trial court "'must maintain an impartial manner and refrain from acting as an advocate for either party.'" *Id.* (quoting *Beatty v. State*, 567 N.E.2d 1134, 1136 (Ind. 1991)). "A violation of due process occurs where a trial judge combines the roles of judge and advocate." *A.N. v. K.G.*, 3 N.E.3d 989, 995 (Ind. Ct. App. 2014), *aff'd on reh'g*, 10 N.E.3d 1270.

> The law presumes that a trial judge is unbiased. To overcome that presumption, the party asserting bias must establish that the trial judge has a personal prejudice for or against a party. Clear bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before him or her. Adverse rulings and findings by the trial judge do not constitute bias per se. Instead, prejudice must be shown by the judge's trial conduct; it cannot be inferred from his [or her] subjective views. Said differently, a party must

> show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced that party's case.

*Richardson v. Richardson*, 34 N.E.3d 696, 703-04 (Ind. Ct. App. 2015) (citations and quotation marks omitted).

[19] Here, the trial court asked questions and made comments throughout both hearings that were improper. The trial court asked Harris, "Who else is paying *your* rent? Somebody is paying rent. *M*e as a taxpayer? …. [What] is it about *you* that requires Section 8 housing such that *you* can't keep track of thirty-eight dollars?" Tr. Vol. 2 at 6 (emphases added). The trial court told Harris, "Okay, if they say you owe thirty-eight dollars for February just pay them the thirty-eight to get it done." *Id.* at 7. In a similar vien, the trial court repeatedly asked Harris why she did not pay the $38.00 to "just get it done." *Id.* at 13. The trial court also commented, "You have people who don't work and free apartments[,] and the rest of us have to work to pay for it. That's one of the problems in our country." *Id.* at 12. The trial court asked Harris, "Why are *you* not paying rent? *I* pay rent. *I* pay a mortgage. Why don't *you*." …. So [you] don't work *you* get free rent? …. What a country, what a country." *Id.* at 25 (emphases added). Lafayette contends that "none" of the trial court's comments are "disparaging" of any person. Appellee's Br. at 17. We disagree. The questions and comments belittle Harris for living in government-subsidized housing and not paying Lafayette $38.00.

[20] We conclude that the trial court failed to preside over the hearing as a neutral, impartial decision maker in violation of Harris's due process rights. The trial

court's actions and demeanor "'crossed the barrier of impartiality and prejudiced'" Harris's case.[3] *See Richardson*, 34 N.E.3d at 703-04 (quoting *Flowers v. State*, 738 N.E.2d 1051, 1061 (Ind. 2000)). Accordingly, even if we were not reversing the judgment based on the trial court's error regarding the burden of proof, we would reverse and order a new hearing by an impartial judge.[4]

[21] Reversed.

Vaidik, C.J., and Mathias, J., concur.

---

[3] *See* Ind. Judicial Conduct Canons 1.2., 2.3(B), and 2.8(B).

[4] Based on our resolution of Harris's burden-shifting claim and due process claims, we need not address her arguments that she received insufficient notice and that the relief ordered by the trial court was unauthorized by statute.