## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 02 2020, 8:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Christopher P. Jeter
Erica Guernsey
Fishers, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ryan Lynch, <br> *Appellant-Defendant/Counterclaimant,* <br><br> v. <br><br> Patrick Johnson, <br> *Appellee-Plaintiff/Counter-Defendant.* | November 2, 2020 <br><br> Court of Appeals Case No. 20A-SC-355 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable Gail Z. Bardach, Judge <br><br> The Honorable Darren J. Murphy, Magistrate <br><br> Trial Court Cause No. 29D06-1902-SC-1379 |

**Altice, Judge.**

## Case Summary

Patrick Johnson brought a small claims action against Ryan Lynch, asserting that Lynch did not pay him for his work in designing a website for Lynch's company. Lynch counterclaimed, asserting that Johnson's work on a prior project involving a mobile application was incomplete. The small claims court found in favor of Johnson on his claim and denied relief to Lynch on his counterclaim.

We affirm.

## Facts & Procedural History

Lynch is the founder and director of a non-profit organization called Indianapolis Ace Academy (Ace),[1] which informs and educates youth about aviation. Johnson is a software designer. In 2017, Lynch hired Johnson to design a mobile phone application for Ace (the mobile app project), and thereafter he hired Johnson to design a website for a frozen yogurt shop in which Lynch is an owner. Lynch paid Johnson in full for both of those projects.

Thereafter, in or around May 2018, Lynch hired Johnson to design an updated website for Ace (the Ace website project). The parties did not have a written contract for the Ace website project, but they did exchange emails about it. On

---

[1] The organization is now known as NARY Foundation.

June 5, 2018, Johnson's project manager, Colleen Zana, emailed Lynch on behalf of Johnson stating that the Ace website project was estimated to require thirty hours of work over the course of four weeks. On June 7, Lynch emailed Zana advising that he wanted to proceed and asking her to schedule the project. On June 30, 2018, Johnson emailed Lynch to let him know that "[t]he new site design is done," and Johnson attached a link to the website. *Exhibits Vol.* at 8. Johnson added, "There are still a few things I might want to tweak" but asked Lynch to let him know "if this looks good for now and I can make it live." *Id.* Lynch replied to Johnson by email about half an hour later, stating "I love the new layout" and calling it "[o]utstanding," and Lynch directed Johnson to "go live" with it. *Id.*

[5]   On July 3, 2018, Johnson sent an invoice to Lynch for the Ace website project reflecting 30 hours of work at $90 per hour, for a total of $2700. The invoice indicated payment was due August 3, 2018, and "overdue payments are subject to interest charge." *Id.* at 13. On September 10, 2018, Lynch texted Johnson, apologizing for not getting back with him and stating, "I owe you some money from the websites and [am] not ignoring you." *Id.* at 11. Lynch explained that he had not yet received expected grant money that he had planned to use to pay for the Ace website project and offered, "Can I make payments (out of pocket) personally to you until I can pay it off?" *Id.* Lynch did not pay Johnson.

[6]   On the afternoon of December 10, 2018, Zana emailed Lynch stating that the Ace website project bill had not been paid and that "we must insist on a full payment" of the $2700 invoice by December 31. *Id.* at 22. Lynch responded

that he had been waiting "on sponsorship funding to come in," to which Zana responded that Johnson had already extended "a very gracious time frame without interest" and that there "was never an agreement that [Johnson] . . . would wait . . . for you to receive [] funds from another source in order to pay [Johnson] for his services." *Id*. at 20-21. Zana offered that Johnson was willing to accept payment of half of the invoice by the end of December and the other half by the end of January 2019. Lynch replied that he was in contact with his legal team.

[7] Later that same day, Johnson advised Lynch that his legal team should contact Johnson directly and that he "went ahead and removed [his] work from [Lynch's] website" but would "be happy to implement it back when the payment is made in full." *Id*. at 19. The two exchanged further emails. Lynch told Johnson that he had already informed Johnson that Ace expected to receive end-of-year funding and that Johnson had taken "illegal" and "unauthorized" actions in changing the Ace website. *Appellant's Appendix* at 29. Johnson replied that the only work removed was "the work that has not been paid for" and offered to "reinstate the design I have done for your website on the basis of good faith if you agree to have the invoice paid in full by the end of January 2019[.]" *Exhibits Vol*. at 18.

[8] On Tuesday, February 6, 2019, Johnson emailed Lynch to advise that, if he did not hear back from Lynch with arrangements to pay, he would be filing a legal action later that week. On February 8, 2019, Johnson filed a small claims complaint for "non payment for website design and build for Ace Academy,"

seeking judgment against Lynch for $4050, comprised of the $2700 invoice and $1350 in expenses incurred for the collection of the amount owed. *Appellant's Appendix* at 21.

[9] On February 27, Lynch sent an email to Johnson stating that the Ace website project "is NOT done" and that Johnson had inappropriately removed it, which affected sales and interrupted operations. *Exhibits Vol.* at 16 (emphasis in original). On March 4, 2019, Johnson emailed Lynch, advising that he had filed a small claims action but offering to dismiss the action if Lynch would "like to go ahead and submit payment for the money you owe by the end of this week[,]" which Johnson stated was $2700 per the invoice and $1350 for time, interest, and the money he was "having to spend to get the money that you owe[.]" *Id.* at 15.

[10] On June 21, 2019, Lynch filed a small claims counterclaim. The counterclaim asserted that in June 2017, Lynch paid Johnson $5400 for the mobile app project, but the app was "never [] created." *Appellant's Appendix* at 46. Lynch requested return of the $5400 plus legal fees from Johnson.

[11] After a series of reset hearings for a variety of reasons, the court held a hearing on January 9, 2020. Both parties were present in person; Lynch was represented by counsel, and Johnson was not.

[12] Johnson testified that he and Lynch agreed "via email and phone" that Johnson would design the Ace website. *Transcript* at 7. Johnson further testified that "[Lynch] specifically requested over the phone to not have a contract on this

one" and Johnson agreed because he "trusted him[.]" *Id.* at 13. Johnson testified that the agreed rate was $90 per hour, which Johnson stated was a discount from his normal rate of $120 per hour, and that he had estimated 30 hours, noting "it actually took more . . . but I decided to keep true to the estimate." *Id*. at 6.

[13] Johnson also described his unsuccessful attempts to collect the money from Lynch and presented the court with the emails described above. Johnson maintained that all the projects he did for Lynch were completed and worked properly. Johnson explained that he did not "deactivate" the Ace website but, rather, "simply removed [his] work from the website." *Id*. at 8. He stated that the additional $1350 requested in his claim was for interest and his time and effort expended to collect the fee for the Ace website project, but told the court, "I'd be happy with the $2700 at this point." *Id*. at 6.

[14] Lynch testified that, at some point after September 2018, he had asked Johnson to fix "some glitches" in the website, and Johnson said he would do so but never did, instead removing his work from the Ace website. *Id*. at 17. Lynch stated that this removal caused him to not have access to the Ace website and required him to expend money to start a new website and lose sales. Johnson responded that there were no glitches as claimed, but recalled that Lynch had at some point after completion asked Johnson to add an "additional feature," namely a photo gallery, which Johnson testified he "was going to provide at no additional cost" if Lynch had paid him. *Id*. at 28.

[15] With regard to the counterclaim, Lynch testified that Johnson never completed the mobile app project, maintaining, "I have no app[,]" and asking for return of the $5400 he paid Johnson in 2017. *Id*. at 17. Johnson's position was twofold. First, Johnson stated that the $5400 that Lynch was seeking in his counterclaim was for "a separate project that was for an application design" and was "totally separate from this [Ace] website project." *Id*. at 3. Second, Johnson asserted that he was hired by Lynch to *design* the mobile app, along with a working prototype, and that he did so (and was paid in full), and that he was not hired to *develop* a working mobile app, which is considerably more expensive and beyond his skills. He testified, "I don't know how to develop mobile apps so that was never an agreement, I would never agree to develop a mobile app." *Id*. at 24.

[16] The small claims court took the matter under advisement and issued an order on January 14, 2020, finding in favor of Johnson on his complaint and denying relief to Lynch on his counterclaim. The court awarded Johnson damages of $2700, the amount of the original invoice. Lynch now appeals.

## Discussion & Decision

[17] Initially, we observe that Johnson did not file an appellee's brief. Under such a circumstance, we do not undertake to develop an argument on his behalf, and we may reverse upon a prima facie showing of reversible error. *Heartland Crossing Found., Inc. v. Dotlich*, 976 N.E.2d 760, 762 (Ind. Ct. App. 2012). Prima facie error, in this context, means "at first sight, on first appearance, or on the

face [of] it." *Id*. (quoting *Carter v. Grace Whitney Props.*, 939 N.E.2d 630, 633-34 (Ind. Ct. App. 2010)). "This standard, however, 'does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required.'" *WindGate Properties, LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018) (quoting *Wharton v. State*, 42 N.E.3d 539, 541 (Ind. Ct. App. 2015)).

[18] The burden of proof in a small claims civil suit is the same as it would be had the case been filed in a general trial court. *Harris v. Lafayette LIHTC, LP*, 85 N.E.3d 871, 876 (Ind. Ct. App. 2017). We will affirm a judgment in favor of the party bearing the burden of proof "if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence." *Id*. Our standard of review in small claims cases is particularly deferential in order to preserve the speedy and informal process for small claims. *Dotlich*, 976 N.E.2d at 762. We neither reweigh the evidence nor assess the credibility of the witnesses. *Id*. We will not set aside the findings or judgment unless clearly erroneous. *Id*.

[19] Here, the small claims court entered judgment in favor of Johnson in the amount of $2700. Lynch maintains that the trial court's decision was in error because there was no enforceable contract between the parties as an essential element was missing, namely, a meeting of the minds as to the terms of their agreement, including "the actual service to be received, price, scope of agreement, and more." *Appellant's Brief* at 6. He argues this lack of a meeting of the minds is evidenced by the parties' "conflicting testimony" that he urges

"laid bare their lack of understanding as to what each was contracting for or to do." *Id*. at 7. We disagree and find no error with the small claims court's decision.

[20] The evidence reveals that Lynch had worked with Johnson on two projects and thereafter hired Johnson in early June 2018 for the Ace website project. Johnson provided Lynch with an estimate of the number of hours that would be required to "build" the website, and Lynch directed Johnson to "go ahead" with it. *Exhibits Vol.* at 6, 9. On June 30, when Johnson sent Lynch a link to the design, Lynch responded that he "love[d]" it and wanted Johnson to go ahead and "go live" with it. *Id*. at 8. There was no mention by Lynch that he was in any way dissatisfied or that it was not complete. Lynch texted Johnson several months later, in September, acknowledging that he owed Johnson money and offering to personally pay him; he did not indicate dissatisfaction with the Ace website or assert that it was in some way incomplete.

[21] Johnson repeatedly asked for payment, and eventually removed content he had created from the Ace website in December 2018. More than two months later, on February 27, 2019, Lynch indicated he was not going to pay and claimed that the website was "NOT done[.]" *Id*. at 16. Lynch's testimony, while stating that "glitches" existed in the Ace website, did not specifically identify what those were. *Transcript* at 17. Contrary to Lynch's claim, the facts do not reflect a lack of agreement; they reflect that Lynch, who had failed to pay for months, was angry that Johnson had removed the content from the Ace website. We

find that the evidence most favorable to the judgment supports the small claim's court's conclusion that Lynch owes Johnson $2700 for the Ace website project.

[22] As to Lynch's counterclaim, the evidence was that Johnson was hired for the mobile app project during or before 2017 and was paid in full ($5400) in June 2017. Lynch at no time after making payment expressed that he did not receive what he hired Johnson to create. In fact, Lynch chose to hire Johnson for the Ace website project a year later; from this, the court could reasonably infer that Lynch was satisfied with Johnson's work on the mobile app project. It was not until June 2019, when Lynch filed his counterclaim, that he asserted the app was "never [] created" and that he did not receive $5400 worth of services from Johnson. *Appellant's Appendix* at 46. At trial, Lynch suggested that all he got for his money was "a picture of an app," but Johnson testified that he produced a design along with a working "fully clickable" prototype – not just a picture – for Lynch to provide to another party to use in developing an app, should Lynch desire to do so. *Transcript* at 15, 31. The trial court weighed the credibility of the witnesses and declined to find in favor of Lynch on his counterclaim. We find no error with the court's decision.

[23] The court's judgment is not clearly erroneous.

[24] Judgment affirmed.

Riley, J. and May, J., concur.