

FILED
Apr 30 2026, 9:16 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Travis D. Morris,

*Appellant-Respondent*

v.

Jacquese White,

*Appellee-Petitioner*

---

April 30, 2026

Court of Appeals Case No.
25A-JP-2039

Appeal from the Lake Superior Court

The Honorable Aimee Talian, Magistrate

Trial Court Cause No.
45D06-1712-JP-1149

---

**Opinion by Judge Kenworthy**
Judges Bradford and Pyle concur.

**Kenworthy, Judge.**

## Case Summary

[1] Travis D. Morris ("Father") and Jacquese M. White ("Mother") are the parents of T.C.M. ("Son") and T.L.M. ("Daughter"). Father appeals the trial court's order awarding sole legal custody to Mother and denying his motions to modify parenting time and child support. Father raises various issues for our review, which we consolidate and restate as:

1. Did the trial court abuse its discretion by awarding sole legal custody to Mother?

2. Did the trial court abuse its discretion by denying Father's motion to modify parenting time?

3. Did the trial court clearly err by denying Father's motion to modify his child support obligation?

4. Did the trial court fail to preside over the proceedings as a neutral decision maker?

[2] We affirm.

## Facts and Procedural History

[3] Father and Mother began dating in 2016. Mother had been living in Toronto, Canada, but relocated to northern Indiana after meeting Father. The two never married. In 2017, they welcomed Son, and in 2019, Daughter. Although Mother and Father continued to reside primarily in Indiana, the children were

born in Canada. Father established paternity of both children in Indiana. After Son's birth, Father traveled to Canada and appeared at the United States consulate to secure American citizenship for Son. Father did not attend Daughter's birth, nor did he travel so Daughter could similarly obtain citizenship.

[4] Father committed acts of physical violence against Mother during their time together. Father battered Mother to the point of interfering with her ability to perform her job duties. She twice lost employment as a result of her injuries. Father later pleaded guilty to a domestic battery charge.

[5] Father and Mother shared legal custody of Son and Daughter. In 2021, Mother filed a notice of intent to relocate to Toronto with both children, which the trial court granted. In the same order, the court set the parameters of Father's future parenting time. Mother was responsible for arranging travel for the children to visit Father one weekend per month, and for making the children available every other week during summer vacations. Father was entitled to have the children for one week during the winter holiday season.

[6] At some point following her return to Canada, Mother was diagnosed with and treated for breast cancer. She received medical care in the United States, and she and the children temporarily lived in northern Indiana again during part of her treatment. After learning about Mother's diagnosis, Father used discovery requests in an attempt to uncover who Mother had listed as her life insurance

beneficiary. Father served subpoenas on Mother's employer, the children's school, and the children's medical providers.

[7] In November 2024, Father filed a motion seeking to modify parenting time, alleging "Mother is currently undergoing treatment for breast cancer, which has impacted her ability to manage the children's transportation needs for school and extracurricular activities." *Appellant's App. Vol. 2* at 80. Father petitioned the trial court to reduce his child support obligation as well. About four months later, Mother filed her own motion asking the court to modify legal custody, terminate Father's overnight visits with the children, and require supervised visitation. In April 2025, the court held an emergency hearing after Father refused to sign Son's passport application unless Mother provided the phone number of an emergency contact in Canada. The court determined Mother had already done so and ordered Father to give his signature. The trial court then scheduled a hearing for June to consider all other pending motions.

[8] At the hearing, Father, *pro se*, urged the court to modify parenting time. He asserted the children lacked access to community and extracurricular activities and were "not living up to the standard that they have been used to" in Indiana. *Tr. Vol. 2* at 13. He blamed Mother for missed parenting time and asked the court for "more time during the summer[.]" *Id.* at 27. Father specifically proposed additional time two nights of the week, extended weekends every other week, and a revised summer schedule of nine days on, five days off. *See id.*; *see also Appellant's App. Vol. 2* at 81. As for his child support obligation, Father testified he paid $580 biweekly but believed "[his] new calculations"

showed he "should be paying $255" instead. *Tr. Vol. 2* at 6. He argued a reduction was warranted because his monthly payment included childcare and private school expenses even though the children had recently been attending public school. In filings to the court, Father reported an annual income of $59,060 from his teaching job. *See Ex. Vol. 2* at 8. He reported additional income from selling merchandise at sporting events. But at the hearing, Father testified his salary was closer to $70,000 after accounting for summer school earnings—income he had not previously disclosed. He did not provide the trial court with any additional documentation to verify his new calculations, his income, or childcare and private school expenses.

[9] For her part, Mother testified Father was "condescending and disrespectful" when interacting with her. *Tr. Vol. 2* at 47. According to Mother, Father's subpoenas complicated matters with her employer and the children's teachers because "nobody likes legal mess . . . and it's been that way for seven consecutive years" of litigation. *Id.* at 57. Mother claimed the children experienced anxiety when they visited Father. She believed Father was "too stern" when relying on corporal punishment to discipline the children. *Id.* at 53. Mother insisted the children were doing "extremely well[,]" she refuted Father's assertions that her medical treatment hindered the children's involvement in community and extracurricular activities. *Id.* at 51. She testified the children participated in swimming lessons, enrichment summer courses, and were well-traveled, having visited the White House, Niagara Falls,

and Disney World in the past year. Mother clarified Father had "made up" any previously missed parenting time. *Id.* at 54.

[10] Mother further testified Father's refusal to travel to Canada has made it impossible to secure United States citizenship for Daughter. And because Daughter lacks citizenship, Mother stated she cannot obtain a social security number or health coverage for the child in Indiana. During her testimony, Mother also requested the trial court take judicial notice of Father's domestic violence case—the court granted the request. *See id.* at 44; *see also Appellee's App. Vol. 2* at 58. Father attempted to undermine Mother's credibility on cross-examination. Responding to Father's question, Mother acknowledged she did not raise the issue of Daughter's citizenship with Father until early 2025. Father justified being unable to travel to Canada in light of the country's strict entry requirements for those who, like him, have a criminal record.

[11] The trial court took the matter under advisement at the conclusion of the hearing. In a subsequent order, the court found in relevant part:

> 2. Father resides in East Chicago, Indiana, and Mother and the minor children reside in Canada.
>
> 3. Father produced a Financial Declaration Form indicating an annual income of approximately $59,000.00 per year. He indicated that his previous child support calculation included the cost of child care and private school which the children did not actually attend for a period of time. On cross-examination, Father later testified that he actually earned approximately $70,000.00 per year, but provided no tax return or proof of income.

4. Mother testified that Father sells t-shirts at sporting events for extra money and did not disclose said income.

***

6. Father is requesting a modification of summer parenting time to allow him to exercise nine days every two weeks and Mother could exercise the remaining five days. He believes that because Mother and the children reside in Canada, that he should have additional time.

***

8. Mother is requesting a modification to give her sole legal custody. She indicates that Father is always so difficult to co-parent with and doesn't approach issues with the children's best interest at heart. She has attempted to work with Father, but very important matters fall to the wayside with Father.

9. Mother indicated that because the children were born in Canada, the parties are required to follow a procedure where the parents and child are to appear at the consulate to file paperwork necessary for the children to obtain United States Citizenship and to report a birth abroad. Father has been aware of this procedure as he successfully completed the process for [Son] shortly after his birth seven years ago. Father failed to appear at the consulate for an appointment with regard to [Daughter]. Father has yet to complete the process and [Daughter] is five years old. Because [Daughter] does not have United States citizenship, she cannot obtain a Social Security number, in turn prohibiting [Daughter] from obtaining health insurance in the United States.

10. Earlier this year, Father refused to sign a passport application for one of the minor children until an order to do so

was issued by this Court. The children missed a week of school because they were refused entry to Canada after a visit to Indiana.

11. Father continually sends subpoenas to the children's medical providers rather than requesting copies of the records from the provider's office. Father has also sent subpoenas to Mother's employer causing tension for Mother at her place of employment.

12. When Father discovered that Mother was ill, he sent discovery requests seeking personal healthcare and life insurance beneficiary information.

13. Despite a history of domestic violence where Father was the aggressor, Mother did indicate that there are times when the parties work very well together, but eventually their ability to co-parent will deteriorate. She believes that she needs to be able to conduct business on behalf of the children without delays caused by Father's lack of cooperation.

*Appellant's App. Vol. 2* at 47–48.

[12]    The court then concluded in pertinent part:

1. Because Father has failed to present this Court with sufficient evidence of verification of income, school and daycare costs and a proposed Child Support Worksheet, his request to modify child support is denied. Father has failed to show that a modification of summer parenting time is in the children's best interest, and, therefore, his request is denied. Father's Petition to Modify Child Support and Parenting Time is denied.

2.  In determining whether an award of joint legal custody is in the best interest of the children, the Court shall consider it a matter of primary, but not determinative, importance that the parents agreed to joint legal custody.  That is not the case in the present matter.

3.  In addition, the Court shall also consider the fitness and suitability of each of the parents, whether the parents are willing and able to communicate and cooperate in advancing the child's welfare, the wishes of the children (which does not apply in this matter as the children are under the age of 14), whether the children have a close relationship with both of the parents, whether the parents reside in close proximity, the nature of the physical and emotional environment in the home and a history of domestic violence.

4.  The Court finds both parents to be fit and suitable for joint legal custody, despite that, they are unable to communicate and cooperate effectively.  The children have close and beneficial relationship [sic] with both parents.  The parties do not reside in close proximity of each other and there is a history of domestic violence.  As a result, the Court finds that it is in the best interest of the minor children that Mother is awarded sole legal custody. Mother's request to modify legal custody is granted.

5.  Although the Court may modify an order granting or denying parenting time rights whenever a modification is in the best interest of the minor children, this Court cannot find that without supervision the physical health and well-being of the children is endangered with Father; therefore, Mother's request to modify Father's parenting time to supervised without overnights is denied.

*Id.* at 48–49.

Almost a month after the trial court issued its order, Father had his domestic violence conviction expunged. *See Appellant's App. Vol. 2* at 96–98. He then petitioned the trial court to "strike all references to 'a history of domestic battery/Violence' from prior and current orders" because of the expungement. *Id.* at 92. The trial court rejected his request. First, the court noted Father's petition was submitted after "the presentation of evidence [had] concluded." *Id.* at 50. Second, the court explained the finding in the order which Father now appeals "was that of a history of domestic violence, not a 'conviction' for domestic violence." *Id.*

## Standard of Review

As our Supreme Court has summarized:

> [T]here is a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson,* 622 N.E.2d 178 (Ind. 1993). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley,* 210 N.E.2d 850, 852 (1965)). "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best,* 941 N.E.2d 499, 502 (Ind. 2011) (citations omitted).

*Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016).

[15] The trial court entered findings of fact and conclusions thereon to support its judgment. We will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In other words, we will not reweigh the evidence or judge the credibility of the witness for ourselves, and we will view the evidence most favorably to the judgment. *Best*, 941 N.E.2d at 502. Where, as here, the trial court enters findings *sua sponte*, we review issues covered by the findings by determining first whether the evidence supports the findings and, if so, whether the findings support the judgment. *Steele-Giri*, 51 N.E.3d at 123. Findings are clearly erroneous if the record contains no facts or inferences supporting them. *State v. Int'l Bus. Mach. Corp.*, 51 N.E.3d 150, 158 (Ind. 2016). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We apply a general judgment standard to issues upon which the trial court made no findings. *Steele-Giri*, 51 N.E.3d at 123–24; *see* T.R. 52(D). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Miller v. Lucas*, 264 N.E.3d 651, 655 (Ind. Ct. App. 2025) (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)).

[16] As an initial matter, we note Father continues *pro se* on appeal. A *pro se* litigant is not given special consideration. *Kelley v. State*, 166 N.E.3d 936, 937 (Ind. Ct. App. 2021). "It is well settled that pro se litigants are held to the same legal standards as licensed attorneys." *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct.

App. 2016). "We will not step in the shoes of the advocate and fashion arguments on his behalf, nor will we address arguments that are too poorly developed or improperly expressed to be understood." *Cingel v. Ferreri*, 269 N.E.3d 857, 859 (Ind. Ct. App. 2025) (citation and internal quotation marks omitted). And "[a] party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record." *Wilcox v. Gingrinch*, 274 N.E.3d 1269, 1277 (Ind. Ct. App. 2026).

## The trial court did not abuse its discretion by awarding legal custody to Mother.

### Finding of history of domestic violence

[17] In his Statement of the Issues, Father alleges the trial court's finding regarding a history of domestic violence is "unsupported by the record and improper in light of the expungement of the sole conviction that formed the basis of such finding." *Appellant's Br.* at 4. Yet Father does not develop this argument whatsoever in his appellate brief. He cites at least two cases purportedly from this Court that do not exist, and the brief is peppered with claims either unsubstantiated with citations to authority or unsupported by the authority on which he does rely. To the extent Father failed to develop his arguments with cogent reasoning and accurate citations to relevant authority, he has waived appellate review. *See Wilcox*, 274 N.E.3d at 1277.

[18] Waiver notwithstanding, we are not persuaded the trial court erred by finding "there is a history of domestic violence" on Father's part. *Appellant's App. Vol. 2* at 48. Father's acts of domestic violence against Mother were so severe they

interfered with her job and twice resulted in loss of employment. We see no reason why the post-hearing expungement of Father's conviction should block the trial court from considering this history. A panel of this Court considered a similar claim in *Matter of A.B.*, an appeal dealing with the admissibility of evidence arising from a Child in Need of Services adjudication. 245 N.E.3d 644, 649 (Ind. Ct. App. 2024). In *A.B.*, the parents argued the trial court abused its discretion by admitting an officer's testimony concerning father's arrest for acts of domestic violence against mother. They alleged the trial court erred by admitting the testimony because the charges were eventually dismissed and expunged from father's record. The panel rejected this argument, holding the applicable expungement statute did not foreclose "the admissibility of the underlying facts of expunged records of charges or convictions." *Id.* Indeed, the panel reasoned the officer's testimony "concerning the facts underlying the expunged charges" was especially important as it pertained to "those facts" that led to the involvement of the Department of Child Services in the first place. *Id.*

[19] Here, Father petitioned the trial court to retract references to a history of domestic violence from all orders following the expungement of his conviction. But like the panel in *A.B.*, we cannot agree with Father that a successful expungement prevents the trial court from considering the underlying facts of the expunged records or conviction. As the trial court explained in rejecting Father's request, the finding in its order refers to a history of domestic violence, not a conviction. *See Appellant's App. Vol. 2* at 50; *see also* Ind. Code § 35-38-9-2(e) (2020) (governing the expungement of conviction records, not

consideration of facts underlying the conviction); *D.A. v. State*, 58 N.E.3d 169, 173 (Ind. 2016) (explaining in context of civil forfeiture claim "expungement statutes do not cover the collateral consequences of a conviction"). Trial courts retain the authority to consider evidence of a history of domestic violence despite expungement of a conviction. Indeed, Indiana law directs trial courts in child custody matters to consider any history of a pattern of domestic or family violence. *See* I.C. § 31-14-13-2(7) (2002); I.C. § 31-14-13-2.3(c)(7) (2009). An expungement seals records but cannot make the underlying facts relevant to the child's best interests disappear.

**Modification of legal custody**

[20] Father next argues the evidence does not support the trial court finding there was a substantial change in one or more of the relevant factors to support modification of joint legal custody.

[21] Following the establishment of paternity, a trial court may not modify a child custody order unless:

> (1) modification is in the best interests of the child; and
>
> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 . . . of this chapter.

I.C. § 31-14-13-6 (1999). The relevant Section 2 factors include:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parents;

    (B) the child's siblings; and

    (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

I.C. § 31-14-13-2 ("Section 2 factors").

A trial court must also consider whether there has been a change in one of the statutory factors governing an award of joint legal custody. *See Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1259–1260 (Ind. Ct. App. 2010). In a paternity case, the factors are:

    (1) the fitness and suitability of each of the persons awarded joint legal custody;

(2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;

(5) whether the persons awarded joint legal custody:

> (A) live in close proximity to each other; and

> (B) plan to continue to do so;

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and

(7) whether there is a pattern of domestic or family violence.

I.C. § 31-14-13-2.3(c) ("Section 2.3 factors").

[23] In this case, the trial court found it was in the children's best interests for Mother to have sole legal custody. Mother and the children reside in Toronto, while Father resides in East Chicago. Since Mother returned to Canada, the ability of the parties to work together has deteriorated. Mother testified Father's subpoena requests have complicated matters for her at work and with the children's teachers. Father has used the discovery process to seek information regarding Mother's medical treatment and life insurance

beneficiaries. Father refused to provide the necessary signature for Son's passport. Mother only obtained Father's signature following an emergency hearing and the trial court's order. Mother further testified Father's refusal to attend the necessary appointments at the U.S. consulate in Toronto has made it impossible for Daughter to acquire U.S. citizenship. Daughter's lack of citizenship has prevented her from securing a social security number and health coverage in the United States.

[24] Father contends Mother did not make him aware of the issue regarding Daughter's citizenship until 2025 and he is unable to travel to Canada because of his criminal record. *See Appellant's Br.* at 12–13. But the trial court found Father was aware of the procedures required to secure citizenship for Daughter, as he previously completed the same process for Son. As for Father's inability to enter Canada, Mother testified Father could have gained entry to the country, *see Tr. Vol. 2* at 66–67, and one of Father's emergency filings to the court suggests Father could have sought admission on a limited basis, *see Appellant's App. Vol. 2* at 62–65. At any rate, Father did not provide the trial court with any evidence he even attempted to resolve his alleged bar to entering Canada. The evidence supports the trial court's findings.

[25] As for the trial court's best interest determination, Father's appellate brief fails to explain—with cogent reasoning and citations to authority—why the court erred in concluding it was in the children's best interests for Mother to have sole legal custody. Father has therefore waived review of the claim on appeal. *See Martin v. Hunt*, 130 N.E.3d 135, 137–38 (Ind. Ct. App. 2019); *see also* Ind.

Appellate Rule 46(A)(8)(a)–(b) (describing contents of "argument" section in an appellate brief).

[26] Even so, we have little trouble with the trial court's best interests determination. Years of litigation have taken a toll on Mother and the children, and Father abused the legal process to seek information about Mother. The facts demonstrate the parties do not live in close proximity and do not plan to do so. The evidence points to an inability of the parties to communicate and cooperate to advance the children's welfare, particularly with respect to securing citizenship, related benefits, and travel documents. Father has a history of domestic violence against Mother. The trial court's findings and conclusions indicate it considered the factors in Section 2 and Section 2.3, and based on these circumstances, the court did not abuse its discretion by awarding sole legal custody to Mother.

## The trial court did not abuse its discretion by denying Father's motion to modify parenting time.

[27] Father similarly posits the trial court abused its discretion by denying his motion to modify parenting time. He maintains the trial court mischaracterized his request in its order as simply asking for more time because he resided in Indiana while Mother and the children lived in Canada. *See Appellant's Br.* at 7. In Father's estimation, the record showed "loss of extracurricular opportunities [for the children], frequent missed visits and gaps in parenting time, stability and safety in Father's home, and a modest 2-day summer modification." *Id.* He believed Mother's cancer treatment "impacted her ability to manage the

children's transportation needs for school and extracurricular activities." *Appellant's App. Vol. 2* at 80.

[28] "Decisions involving parenting time rights under the paternity statutes are committed to the sound discretion of the trial court." *In re Paternity of W.C.*, 952 N.E.2d 810, 815 (Ind. Ct. App. 2011). Parenting time decisions are generally reviewed for an abuse of discretion. *Rickman v. Rickman*, 993 N.E.2d 1166, 1168 (Ind. Ct. App. 2013). This Court neither reweighs the evidence nor reexamines the credibility of the witnesses. *W.C.*, 952 N.E.2d at 816. Indiana has long recognized the right of a noncustodial parent to visit his or her children as a "precious privilege." *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1274 (Ind. Ct. App. 2009). But the privilege is "subordinated to the best interests of the child." *W.C.*, 952 N.E.2d at 816; *see also* I.C. § 31-14-14-2 (2005) ("The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child.").

[29] Here, Mother testified the children participated in swimming lessons and summer enrichment courses. She described the children's travels, including trips to the White House, Niagara Falls, and Disney World. She maintained the children were "doing extremely well" and there was "no missed parenting time." *Tr. Vol. 2* at 51, 54. Mother stated the children felt anxious when they traveled to Father's home. The evidence before the trial court does not support Father's suggestion that Mother's recovery has negatively impacted the well-being of the children. Mother urged Father to "just settle into parenting" and asked the court to give her "an opportunity to heal from breast cancer." *Id.* at

81. After considering the parties' testimony, the court determined it was not in the best interests of the children to modify parenting time. Father's argument is essentially a request to reweigh the evidence which this Court will not do. *See W.C.*, 952 N.E.2d at 816.

## The trial court did not err by denying Father's motion to modify child support.

[30] Father additionally contends the trial court abused its discretion by refusing to reduce his child support obligation from its current level of $580 every other week. He claimed to be unnecessarily paying for private school tuition and childcare expenses. Father argues the trial court erred by engaging in a "selective treatment of the admissible evidence." *Appellant's Br.* at 9.

[31] "A trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). The party petitioning for modification has the burden of proof. *Miller v. Carpenter*, 965 N.E.2d 104, 111 (Ind. Ct. App. 2012). "Upon review of a modification order, only evidence and reasonable inferences favorable to the judgment are considered." *DeGrado v. DeGrado*, 243 N.E.3d 381, 387 (Ind. Ct. App. 2024) (citation and internal quotations omitted). The trial court's order will be set aside only if clearly erroneous. *Weinzapfel v. Weinzapfel*, 274 N.E.3d 502, 508 (Ind. Ct. App. 2025).[1]

---

[1] Other panels of this Court have described the standard of review as one of abuse of discretion. *See, e.g., Patton v. Patton*, 48 N.E.3d 17, 22 (Ind. Ct. App. 2015). "Whether the standard of review is phrased as 'abuse of discretion' or 'clear error,' this deference is a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their

"A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court." *Young*, 891 N.E.2d at 1047.

[32] Pursuant to Indiana Code Section 31-16-8-1(b), a trial court may modify or revoke a child support order only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>
>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[33] In his financial declaration, Father reported earning approximately $59,000 annually. Although he also claimed income from a side business selling merchandise, he offered no details about the enterprise. And at the hearing, Father testified he actually made around $70,000 in the previous year. He attributed the additional amount to earnings made from teaching summer

relationship with their children[.]" *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005) (citation and footnote omitted).

school.  He had not previously disclosed summer school employment to the court.

[34] Putting his conflicting declarations aside, Father did not provide the trial court with any documentation to verify his income, such as paystubs, employer statements, or receipts for business expenses.  *See* Ind. Child Support Guideline 3(B)(2) (listing supporting documentation to verify income).  He did not present evidence of childcare or private school expenses.  Nor did he provide the income verification worksheet required for the court to properly consider his motion for modification.  *See* Child Supp. G. 3(B)(1).  Father had the burden of proof, *see Miller*, 965 N.E.2d at 111, and as Mother suggests, his failure to meet that burden made it impossible for the court to assess whether the statutory requirements for a modification of child support had been satisfied, *see Appellee's Br.* at 22 (citing I.C. § 31-16-8-1).  The trial court's denial of Father's request to modify his child support obligation was not clearly erroneous.

## The trial court presided over the proceedings as a neutral decision maker.

[35] Lastly, Father argues several "incidents collectively demonstrate an appearance of partiality requiring vacatur and reassignment" to a new judge.  *Appellant's Br.* at 19.  Father did not file a motion for recusal; he took issue with the trial court's treatment of his case at the hearing.  *See Tr. Vol. 2* at 40 (Father stating, "I assume that the judge is acting as a lawyer now").

[36] "The law presumes that a judge is unbiased and unprejudiced." *L.G. v. S.L.*, 88 N.E.3d 1069, 1074 (Ind. 2018); *see also Seabolt v. State*, 240 N.E.3d 1249, 1258 (Ind. 2024). Trial before an impartial judge is an essential element of due process. *Harris v. Lafayette LIHTC, LP*, 85 N.E.3d 871, 878 (Ind. Ct. App. 2017). "We afford trial judges ample 'latitude to run the courtroom and maintain discipline and control of the trial.'" *Id.* (quoting *In re J.K.*, 30 N.E.3d 695, 698 (Ind. 2015)). The party alleging bias "must establish that the trial judge has a personal prejudice for or against a party." *Chappey v. Storey*, 204 N.E.3d 932, 939 (Ind. Ct. App. 2023), *trans. denied*. "Clear bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before him or her." *Id.* The adverse rulings and findings of a trial judge are not bias *per se*. *Id.* In other words, "a party must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced that party's case." *Id.*

[37] In this matter, most of the "incidents" Father argues evince bias constitute either adverse rulings or findings. *See Appellant's Br.* at 7 (adverse finding about testimonial evidence), 14 (adverse ruling based on Father's attempt to submit additional evidence after the hearing), 17 (adverse findings regarding Father's income and ruling on the expungement issue). These adverse rulings and findings do not establish bias. *See Chappey*, 204 N.E.3d at 939. Nor do the specific remarks Father identifies as problematic reveal the trial judge "expressed an opinion on the merits of the controversy" before her. *Id.* Father

did not show the trial judge's actions and demeanor crossed the barrier of impartiality and prejudiced his case. *See Harris*, 85 N.E.3d at 878.

## Conclusion

[38] The trial court did not abuse its discretion by granting sole legal custody to Mother and denying Father's requests to modify parenting time and child support. And upon review of the record, we are confident the court did not cross the barrier of impartiality in the proceedings below.

[39] Affirmed.

Bradford, J., and Pyle, J., concur.

APPELLANT PRO SE

Travis D. Morris
East Chicago, Indiana

ATTORNEY FOR APPELLEE

Andrew P. Martin
Miller, Sachs & Hess, P.C.
Crown Point, Indiana